**PELTON & ASSOCIATES PC**
Brent E. Pelton (BP 1055)
pelton@peltonlaw.com
Taylor B. Graham (TG 9607)
graham@peltonlaw.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltonlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **FRANKIE FIGUEROA, DANNION JORDAN, JAMEZ LEGGETT, LAMONT GRAY and SHAWN PARRILLA, Individually and on Behalf of All Others Similarly Situated,**<br><br>        **Plaintiffs,**<br><br>-against-<br><br>**ROVINI CONCRETE CORP., ROVINI CONSTRUCTION CORP.,  VINCENT ZOLLO, and ROSEMARY ZOLLO, Jointly and Severally,**<br><br>        **Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Frankie Figueroa, Dannion Jordan, Jamez Leggett, Lamont Gray and Shawn Parrilla (together, the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

1

## NATURE OF THE ACTION

1.      Plaintiffs are former employees of Defendants who worked as construction laborers on various projects in midtown Manhattan, New York County, New York. Despite the fact that they routinely worked in excess of forty (40) hours each week, Plaintiffs and Defendants' other construction employees were paid their regular hourly rate for all hours worked, including hours worked in excess of forty (40) hours each week.

2.      Plaintiffs bring this action to recover unpaid overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs also bring this action to recover damages for violations of New York wage notice and wage statement requirements pursuant to the NYLL and the supporting regulations.

3.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all hourly construction laborers who worked for Defendants in New York.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C.

§§ 2201 and 2202.

## THE PARTIES

**Plaintiff:**

7.      Plaintiffs Figueroa, Leggett, Gray and Parrilla were, at all relevant times, adult individuals residing in New York County, New York.

8.      Plaintiff Jordan was, at all relevant times, an adult individual residing in Bronx County, New York.

9.      Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

10.      Upon information and belief, Rovini Concrete Corp. ("Rovini Concrete") is an active New York Corporation, with its principal place of business located at 310 Nassau Avenue, Brooklyn, NY 11222.

11.      Upon information and belief, Rovini Construction Corp. ("Rovini Construction" and, together with Rovini Concrete, "Rovini" or, the "Corporate Defendants") is an active New York Corporation, with its principal place of business located at 87 Main Pkwy E, Plainview, New York 11803.

12.      Defendant Vincent Zollo ("V. Zollo") is an owner and operator of the Corporate Defendants who sets the Corporate Defendants' payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, V. Zollo was in charge of determining the Corporate Defendants' policies with respect to payroll, and otherwise running the business of the Corporate Defendants.

13.      Defendant Rosemary Zollo ("R. Zollo" and, together with V. Zollo, the

"Individual Defendants" and, collectively with the Corporate Defendants, the "Defendants") is an owner and operator of the Corporate Defendants who sets the Corporate Defendants' payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, R. Zollo was in charge of determining the Corporate Defendants' policies with respect to payroll, and otherwise running the business of the Corporate Defendants.

14.     Upon information and belief, the Individual Defendants participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and the regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL §§ 2 and 651 and the regulations promulgated thereunder, and is jointly and severally liable with the Corporate Defendant.

15.     Upon information and belief, the Corporate Defendants operated together as a single integrated business enterprise utilizing the same business practices and policies.

16.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

17.     At all relevant times, Plaintiffs were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

18.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

## **COLLECTIVE ACTION ALLEGATIONS**

19.    Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since October 13, 2012 and through the entry of judgment in this case (the "Collective Action Period") who worked as construction laborers (the "Collective Action Members").

20.    A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of this policy, Plaintiffs and the Collective Action Members did not receive legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

21.    Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## **RULE 23 CLASS ALLEGATIONS**

22.    Pursuant to the NYLL, Plaintiffs bring their Second through Fourth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants in New York at any time since October 13, 2009 and through the entry of judgment in this case (the "Class Period") who worked as construction laborers (the "Class Members").

23.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from

Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

24.     <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

25.     Upon information and belief, there are in excess of forty (40) Class Members.

26.     <u>Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members</u>. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

a.    whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

b.    whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;

c.    whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

d.    whether Defendants failed to provide Plaintiff and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

e.    whether Defendants failed to provide proper wage notice to Plaintiff and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

f.    whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

g.    whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and

disbursements and attorneys' fees.

27.     The answer to these questions would drive resolution of the litigation. If a judge and/or jury agrees with Plaintiff on these issues, Defendants would be liable to all Class Members for their NYLL wage and hour violations.

28.     Plaintiffs' claims are typical of the Class Members' claims. Plaintiffs, like all Class Members, are construction employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, not paid overtime premium pay for hours worked over forty (40) hours in a given workweek and did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

29.     Plaintiffs and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

30.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

31.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants are sophisticated parties with substantial resources. The individual Plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against the Corporate Defendant. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Defendants' Company

32.     At all relevant times, Defendants Rovini Construction and Rovini Concrete have been in the construction contracting and concrete businesses, respectively. Upon information and belief, Defendants currently own, operate and manage construction contracting and concrete pouring companies with their principal offices located at 310 Nassau Avenue, Brooklyn, New York 11222.

33.     According to the New York State Department of State Division of Corporations filings, Defendant R. Zollo is listed as the Chief Executive Officer of Rovini Construction. Defendant R. Zollo is also listed as the DOS Process contact in the corporate filings for Rovini Concrete.

34.     Upon information and belief, the Corporate Defendants operate together as a single integrated business enterprise with shared ownership, management, employees, policies, and employment practices.

### Plaintiffs' Work for Defendants

35.     Plaintiff Figueroa was employed by Defendants as a laborer from in or around October 2014 through in or around August 2, 2015 (the "Figueroa Employment Period").

36.     Plaintiff Figueroa's duties included pumping and pouring concrete and installing metal or wood reinforcing bars to strengthen and hold concrete inside walls. Throughout the Figueroa Employment Period, Plaintiff Figueroa typically performed work at building sites located at 42nd Street and 9th Avenue and 43rd Street and 10th Avenue.

37.     Throughout the Figueroa Employment Period, Plaintiff Figueroa typically worked five (5) or six (6) days per week from approximately 7:00 am to between 3:00 pm and 5:00 pm

or 6:00 pm for a total of approximately forty-five to fifty-five (45-55) hours per week, and sometimes more.

38.    Throughout the Figueroa Employment Period, Plaintiff Figueroa was paid eighteen dollars ($18.00) per hour.

39.    On one occasion in or around October 2014, Plaintiff Figueroa recorded a conversation between himself and "Alan," his supervisor, during which he asked Alan why he appeared to be getting paid for forty eight and one-half (48.5) hours when he had worked fifty-three (53) hours that week. Alan responded by explaining that he was getting the eight-and-a-half (8.5) hours of overtime at his "hourly rate."

40.    During another recorded conversation between Alan and Plaintiff Figueroa, Plaintiff Figueroa asked Alan when he could expect to receive twenty-seven dollars and fifty cents ($27.50) for overtime hours instead of his regular hourly rate of eighteen dollars ($18.00) per hour. Alan responded by telling Figueroa, "you're always getting $18.00 per hour." When Figueroa asked if that included hours worked in excess of forty (40), Alan said "yes." Alan then went on to say, as an example, that "if you work 14 hours [overtime], that's still 14 [hours] at $18.00 per hour." When Figueroa asked whether he was always going to be paid straight time for all hours worked, Alan informed him that "they're supposed to tell you that from day one." When Figueroa asked if he would continue to get paid eighteen dollars ($18.00) per hour for hours worked over forty (40) in a week even if he went to a different job site, Alan confirmed that "any job for me, it's all the same." When Figueroa asked Alan whether he meant that Figueroa would be paid $18.00 per hour for all hours worked at any job site, Alan replied, "yeah."

41.    Plaintiff Jordan was employed by Defendants as a laborer from in or around

9

January 2, 2015 through in or around August 1, 2015 (the "Jordan Employment Period").

42.     Plaintiff Jordan's duties included pouring cement, breaking down re-shores and performing various cleanup tasks around building sites. Throughout the Jordan Employment Period, Plaintiff Jordan typically worked on a building located at 43rd Street and 10th Avenue. In or around early late June or early July 2015, Plaintiff Jordan began performing work on a hotel building site located at 577 9th Avenue, New York, NY 10036.

43.     Throughout the Jordan Employment Period, Plaintiff Jordan typically worked six (6) days per week from between 6:30 am and 6:45 am to between approximately 6:00 pm and 7:00 pm, and sometimes later for a total of approximately fifty to fifty-five (50-55) hours per week. Approximately two to three (2-3) times per week, a labor foreman, Ethos Rivera ("Rivera"), would instruct Plaintiff Jordan the night before to arrive at the job site early the next day. Whenever Rivera required Jordan to be at job site early, he typically arrived between 4:30 am and 5:00 am.

44.     Throughout the Jordan Employment Period, Plaintiff Jordan was paid eighteen dollars ($18.00) per hour.

45.     Plaintiff Leggett was employed by Defendants as a laborer from in or around September 2014 through in or around February 2015 (the "Leggett Employment Period"). Throughout the Leggett Employment Period, Plaintiff Leggett typically performed work at a building site located at 43rd Street and 11th Avenue.

46.     Throughout the Leggett Employment Period, Plaintiff Leggett typically worked a six (6) days per week from 6:00 am to approximately 4:30 pm, and sometimes later, for a total of approximately fifty-four to sixty (54-60) hours per week.

47.     Throughout the Leggett Employment Period, Plaintiff Leggett was paid sixteen

dollars ($16.00) per hour.

48.     Plaintiff Gray was employed by Defendants as a laborer from in or around October 2014 through in or around July 31, 2015 (the "Gray Employment Period").

49.     Plaintiff Gray's duties included pouring concrete, carrying construction equipment and tools from one location to another, filling the dumpster with debris and scraps, cleaning, and performing various tasks related to bar reassuring. Throughout the Gray Employment Period, Plaintiff Gray often performed work on a building site located at 42nd Street and 9th Avenue.

50.     Throughout the Gray Employment Period, Plaintiff Gray typically worked five (5) or six (6) days a week from approximately 6:30 am or 6:45 am to between approximately 3:30 pm and 3:45 pm, and sometimes as late as 5:30 pm a total of forty-five to fifty (45-50) hours per week.

51.     Throughout the Gray Employment Period, Plaintiff Gray was paid eighteen dollars ($18.00) per hour.

52.     Plaintiff Parrilla was employed by Defendants as a laborer from in or around February 2014 through in or around July 2015 (the "Parrilla Employment Period").

53.     Plaintiff Parrilla's duties included pouring concrete, cleaning, installing metal or wood forms inside walls, collecting garbage and debris and placing safety rails around the building site. Throughout the Parrilla Employment Period, Plaintiff Parrilla often performed work at building sites located at 43rd Street and 10th Avenue and 42nd Street and 9th Avenue.

54.     Throughout the Parrilla Employment Period, Plaintiff Parrilla typically worked six (6) days per week from between approximately 6:30 am and 7:00 am, and sometimes as early as 4:00 am, to approximately 3:30 pm, and sometimes as late at 5:00 pm or 6:00 pm.

55. Throughout the Parrilla Employment Period, Plaintiff Parrilla was paid eighteen dollars ($18.00) per hour.

56. Although Plaintiffs appeared to have received overtime pay at one and one-half (1.5) times their regular rate for certain hours that they worked in excess of forty (40), there were typically several hours "missing" from their payment each week such that they did not receive overtime premium pay for all hours worked in excess of forty (40) in a given workweek. Upon information and belief, Defendants deliberately decreased the number of hours on Plaintiffs' pay stubs such that the gross amount resulted in straight time for all hours that they worked.

57. Upon information and belief, "Alan," Ethos Rivera, "Gino" and "Freddy" typically directed and supervised Plaintiffs' work. Upon information and belief, Defendant Zollo is in constant contact with "Alan," Rivera, "Gino," "Freddy" and other supervisors and foremen to ensure that the company is operating in accordance with her standards and policies.

58. Upon information and belief, BRF Construction Corp. ("BRF"), Hudson Meridian Construction Group ("Hudson Meridian") and "New Millennium" were general contractors of certain projects on which Plaintiffs worked. Upon information and belief, BRF subcontracted Rovini Concrete to provide labor for a hotel development site located at 577 9th Avenue, a building located at 42nd Street and 9th Avenue, and other construction projects. Upon information and belief Hudson Meridian subcontracted Rovini Concrete to provide labor for a building located at 43rd Street and 11th Avenue.

59. On certain projects, including the 43rd Street and 10th Avenue building site, the foremen filled out time sheets to record the number of hours that Plaintiffs worked. Plaintiffs did not have access to the information in the time sheets. In or around 2015, Defendants implemented a punch clock to keep track of the hours that Plaintiffs worked. Although Plaintiffs

typically punched in and out when they arrived and left a job site, they were not properly compensated for all hours that they worked.

60.    Upon information and belief, Defendants would typically pay undocumented workers entirely in cash by splitting a check between as many as eight to ten (8-10) workers.

61.    Plaintiffs did not receive proper wage statements with their wage payments including an accurate breakdown of their hours into regular and overtime hours. Defendants' failure to provide Plaintiffs with proper wage statements was a corporate policy which applied to all Class Members.

62.    Defendants failed to provide Plaintiffs with a wage notice at the date of their hiring or by February 1 of each year. Defendants' failure to provide proper wage notice and wage statements was a corporate policy which applied to all Plaintiffs and Class Members.

63.    Plaintiffs and the Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay overtime premiums and failing to provide proper wage notice and wage statements.

64.    Plaintiffs have spoken with numerous other employees of Defendants, who similarly worked in excess of forty (40) hours per week during the Class Period and were similarly paid less than one and one-half (1.5) times their regular rate for certain hours worked over forty (40) hours in a week. Defendants' failure to pay Plaintiffs and the Class Members overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week was a corporate policy of Defendants, which applied to all of their glazing mechanics and foremen throughout the relevant period.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME

65.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

66.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

67.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

68.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME

69.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

70.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular

rate of pay for hours worked in excess of forty (40) each week, in violation of the NYLL and regulations promulgated thereunder.

71.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.   Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**THIRD CAUSE OF ACTION**
**<ins>NEW YORK LABOR LAW – WAGE NOTICE VIOLATIONS</ins>**

72.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

73.     At all relevant times, Defendants employed and/or continue to employ Plaintiffs and each Class Member within the meaning of the NYLL, §§ 2 and 651.

74.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

75.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500.00) per employee, as provided for by NYLL, Article 6, §§ 190 et seq., reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS**

76.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

77.     Defendants have willfully failed to supply Plaintiffs and the Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the hourly rate or rates of pay and overtime rate or rates of pay, if applicable, and the number of overtime hours worked.

78.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 et seq., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective and Class Action Members, respectfully request that this Court grant the following relief:

a.      Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.      An order tolling the statute of limitations;

d.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.      An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.  Fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

i.  One hundred dollars ($100) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

j.  An award of prejudgment and post-judgment interest;

k.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
        October 13, 2015

PELTON & ASSOCIATES PC

By: _____
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative Collective and Class*

18

August 26, 2015

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Rovini Concrete Corp. and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_____          8-26-2015          Frankie Figueroa
Signature                        Date                Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Rovini Concrete Corp., and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____     9/2/15     _____
Signature                                          Date                          Printed Name

**CONSENT TO BECOME PARTY PLAINTIFF**

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Rovini Concrete Corp., and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_____      8.28.2015          James Leggett
Signature                    Date                Printed Name

**CONSENT TO BECOME PARTY PLAINTIFF**

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Rovini Concrete Corp., and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____          9/1/15          LAmont Gray
Signature                          Date            Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Rovini Concrete Corp., and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


| Shaun Parrilla | 09/02/2015 | Shawn Parrilla |
|---|---|---|
| Signature | Date | Printed Name |